[Cite as *Kushan v. King David Post Acute Nursing & Rehab., L.L.C.*, 2026-Ohio-2717.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

PERRI KUSHAN, ET AL.,                :

    Plaintiffs-Appellants,        :

                       No. 115666

    v.                           :

KING DAVID POST ACUTE NURSING
& REHABILITATION LLC, ET AL.,        :

    Defendants-Appellees.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 16, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-110659

---

### *Appearances:*

HABER LLP, Richard C. Haber, Lindsey K. Self, and
Natalie D. Davis, *for appellants*.

FRANTZ WARD LLP, Ryan T. Smith, Angela D. Lydon,
and Katherine E. McLaughlin, *for appellees*.

ANITA LASTER MAYS, J.:

{¶ 1} Plaintiffs-appellants Perri Kushan and Linda Novak-Eedy
(collectively, "appellants") appeal from the judgment of the trial court granting the
motion of defendants-appellees King David Post Acute Nursing & Rehabilitation

LLC, Outcome Healthcare LLC, Diane Liliestedt, and Tara Miller (collectively, "appellees") to stay the underlying proceedings pending arbitration. After a thorough review of the record and applicable law, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellants were employed as dietitians at a long-term care facility located in Beachwood, Ohio. Kushan began her employment at the facility in July 1989, and Novak-Eedy began her employment in May 1990. Both appellants were employed at the facility for more than three decades, originally working for Menorah Park.

{¶ 3} In 2023, defendant-appellee Outcome Healthcare LLC ("Outcome") became the owner and operator of the facility, and the facility was renamed King David Post Acute Nursing & Rehabilitation LLC ("King David"). Appellants continued their employment under the new ownership. Defendant-appellee Diane Liliestedt ("Liliestedt") and defendant-appellee Tara Miller ("Miller") were appellants' supervisors during the relevant time period.

{¶ 4} On or about December 13, 2023, representatives from Outcome informed current employees at the facility that each employee was required to execute a series of agreements and acknowledgements (the "onboarding documents") as a condition of continued employment. The onboarding documents were transmitted to employees through an electronic portal called HostedTime. Employees received an email from HostedTime with instructions on how to create an account on the portal in order to access and sign the onboarding documents.

{¶ 5} The onboarding documents included a USCIS Form I-9, an IRS Form W-4, a Non-Union PTO Plan Acknowledgement, an IRS Form 8850, a Time Clock Procedures Acknowledgement, a Confidentiality and HIPAA Acknowledgement, a Confidentiality in the Workplace and Resident Information Agreement, a Release for Criminal History Records, a Drug-Free Workplace Policy Agreement, and a Mutual Arbitration Agreement (the "Arbitration Agreement"). The Arbitration Agreement was the final document presented to employees through the HostedTime portal.

{¶ 6} The Arbitration Agreement was a four-page document between the employee and Healthcare Payroll KD, a special purpose limited liability company that King David used for its payroll services. The Arbitration Agreement provided that the parties would arbitrate "any and all claims" arising out of or related to the employment relationship, including "any claim of any kind . . . arising from or relating to an alleged violation of Federal or State employment law of any kind." The Arbitration Agreement further provided that, by signing, the employee was relinquishing the right to file a lawsuit in any court and the right to a jury trial.

{¶ 7} The Arbitration Agreement contained a one-year contractual limitations period that stated: "Any request for arbitration of a dispute must be requested and submitted to the arbitrator within one (1) year of the date on which the event giving rise to the dispute occurred. The failure to submit a request for Arbitration within such one (1) year period shall operate as a bar to any subsequent requests for arbitration, or for any claim for relief or remedy, or to any action or legal

proceeding of any kind or nature, and the parties will be forever barred from arbitrating or litigating a resolution to any such dispute." The Arbitration Agreement also contained a 30-day rescission provision permitting an employee to rescind the agreement by notifying the facility in writing. The agreement specifically states: "Employee or, in the event of Employee's incapacity, Employee's authorized representative have the right to rescind this arbitration agreement by notifying the Facility in writing within thirty (30) days of the employment date." Arbitration Agreement, Section I.

{¶ 8} According to appellants, the HostedTime portal prompted each employee to sign each onboarding document immediately upon its display and did not permit the user to move forward without signing the preceding document. Appellants averred that they were not given an opportunity to negotiate any part of the Arbitration Agreement, that the portal did not permit users to modify or rescind a signature once entered, and that the portal did not prompt or permit users to view, download, or print the documents. Appellants further averred that once they submitted the signed onboarding documents, they no longer had access to those documents and did not receive an email confirmation or receipt. Appellants stated that Novak-Eedy requested copies of the onboarding documents and that her request was not fulfilled. Appellees, by contrast, submitted the affidavit of Maggie Rodriguez, King David's current human resources director, who stated that employees could access, download, and print the onboarding documents through

HostedTime at any time and that Kushan logged into HostedTime numerous times between June 24, 2024, and August 30, 2024.

{¶ 9} Appellants' employment was terminated on September 9, 2024. Both appellants were women over the age of forty at the time of their terminations.

{¶ 10} Kushan filed a charge of discrimination with the Ohio Civil Rights Commission on September 27, 2024, and Novak-Eedy filed a similar charge on October 3, 2024. On October 9, 2024, counsel for appellants notified appellees that appellants had retained legal counsel, had filed charges with the Ohio Civil Rights Commission, and intended to pursue legal action. Between October 9, 2024, and January 21, 2025, appellees did not submit the dispute to arbitration.

{¶ 11} On January 21, 2025, appellants filed their complaint in the trial court. The complaint asserted three counts: age discrimination in violation of R.C. 4112.02 (Count 1); aiding and abetting age discrimination in violation of R.C. 4112.02(J) (Count 2); and retaliation in violation of R.C. 3721.24 (Count 3).

{¶ 12} Appellees' counsel also represented the defendants in a separate but related action filed by Ilona Yormick ("Yormick"), a former coworker of appellants, who was represented by the same counsel as appellants. *Yormick v. King David Post Acute Nursing & Rehab.*, Cuyahoga C.P. No. CV-24-108123, was litigated in tandem with the matter underlying this appeal.

{¶ 13} On February 24, 2025, King David, Liliestedt, and Miller filed an answer to the complaint. The answer asserted 38 affirmative defenses, none of which referenced arbitration or an agreement to arbitrate. On the same date,

Outcome filed a motion to dismiss for lack of personal jurisdiction pursuant to Civ.R. 12(B)(2). Outcome's motion to dismiss did not assert any right to arbitrate and did not reference the Arbitration Agreement.

{¶ 14} On March 10, 2025, appellants served their first set of discovery requests on appellees. Interrogatory No. 2 requested identification of all individuals known to be in possession of "[o]nboarding agreements between Plaintiffs and Outcome executed in or around December 2023." Request for Admission No. 3 asked appellees to admit whether they "asked Menorah Park/King David employees to sign onboarding agreements with Outcome in or around December 2023."

{¶ 15} On March 13, 2025, Outcome filed the affidavit of H. Jason Black ("Black"), the Administrator for King David, as an exhibit to its reply in support of the motion to dismiss in the related Yormick action. Outcome filed the same affidavit in the present matter on March 18, 2025, as exhibit No. 4 to its reply in support of the motion to dismiss. The Black affidavit attached, as Exhibit A, copies of the onboarding documents executed by Yormick, including the Arbitration Agreement signed by Yormick. On March 18, 2025, appellants supplemented their discovery requests to seek unredacted copies of the onboarding documents attached to the Black affidavit, including any agreements signed by appellants.

{¶ 16} On April 3, 2025, appellees' former counsel requested a 28-day extension to respond to appellants' initial discovery requests. On or about April 9, 2025, appellees retained new counsel. New counsel entered a notice of substitution on April 18, 2025. On April 30, 2025, Outcome filed its answer in the related

Yormick action. Outcome's answer in Yormick did not assert arbitration as an affirmative defense, although the Arbitration Agreement had been filed on the record in that case approximately six weeks earlier.

{¶ 17} On May 1, 2025, additional counsel for appellees entered a notice of appearance in the present matter. On May 5, 2025, appellees served their responses to appellants' first set of discovery requests. In response to Interrogatory No. 2, appellees objected on the basis that the interrogatory sought information that was "neither relevant nor reasonably calculated to lead to the discovery of admissible evidence as to any of the claims or defenses in this lawsuit." Appellees raised the same objection in response to Request for Admission No. 3. Appellees did not produce the onboarding documents at that time.

{¶ 18} On May 27, 2025, appellants served their second set of discovery requests on appellees. Between May 22, 2025, and July 16, 2025, counsel for the parties corresponded regularly regarding discovery and depositions. On July 14, 2025, appellants' counsel served notices of depositions.

{¶ 19} On July 16, 2025, appellees' counsel notified appellants' counsel that appellees had "very recently discovered arbitration agreements signed by Ms. Yormick, Ms. Kushan, and Ms. Novak-Eedy." Appellees then provided copies of the Arbitration Agreements to appellants. On July 21, 2025, approximately six months after the filing of the complaint and five months after Outcome filed its motion to dismiss, appellees filed a motion to stay proceedings pending arbitration pursuant to R.C. 2711.02. On the same date, appellees filed a separate motion to

stay discovery pending a ruling on the motion to stay pending arbitration. Appellees represented in their motion that counsel had first learned of the applicability of the Arbitration Agreement on July 11, 2025, while reviewing appellants' personnel and onboarding documents.

{¶ 20} On August 4, 2025, appellants filed an unopposed motion for a seven-day extension of time to file their oppositions  On August 11, 2025, appellants filed their brief in opposition to the motion to stay proceedings pending arbitration and their brief in opposition to the motion to stay discovery. Appellants argued that the Arbitration Agreement was procedurally and substantively unconscionable, that appellees had waived any right to arbitration through their litigation conduct, and that appellees had failed to timely initiate arbitration as required under the Arbitration Agreement.

{¶ 21} On August 15, 2025, the trial court set a case-management conference for August 22, 2025, by telephone. The parties appeared at the August 22, 2025 case-management conference and orally briefed the trial court on the issues raised in the motion to stay. On August 25, 2025, appellees filed their reply in support of the motion to stay proceedings pending arbitration and their reply in support of the motion to stay discovery. The trial court set an additional case-management conference for September 4, 2025.

{¶ 22} On September 2, 2025, appellants filed a motion for leave to file a surreply in opposition to appellees' motion to stay proceedings pending arbitration, with the proposed surreply attached.

{¶ 23} On September 4, 2025, the trial court entered a journal entry referring the case to arbitration pursuant to Loc.R. 21 of the Court of Common Pleas of Cuyahoga County, General Division. The journal entry directed that the case be arbitrated no later than January 28, 2026.

{¶ 24} On September 19, 2025, appellees filed an unopposed motion for clarification of docket entry, requesting that the trial court vacate and reissue its September 4, 2025 order to reflect that the case was being referred to arbitration under the parties' Arbitration Agreement pursuant to R.C. 2711.03(A), rather than to court-administered arbitration under Loc.R. 21.

{¶ 25} On September 25, 2025, the trial court in the related Yormick action denied the substantially identical motion to stay pending arbitration filed by appellees in that case.[1] On September 30, 2025, the trial court in the present matter vacated its September 4, 2025 arbitration referral. That same day, appellants filed a motion for reconsideration and notice of supplemental authority, alerting the trial court to the contrary ruling in Yormick and raising the issue of the scope of the Arbitration Agreement.

{¶ 26} On October 1, 2025, the trial court entered a journal entry granting appellees' motion to stay pending arbitration. The journal entry provided that the case was "stayed and is to be arbitrated pursuant to the Parties' arbitration agreement and not through the Court's DR Department." The trial court did not

---

[1] Yormick filed an appeal with this court, and in *Yormick v. King David Post Acute Nursing & Rehab. LLC,* 2026-Ohio-1776, ¶ 1 (8th Dist.), this court affirmed the trial court's denial of the motion to stay pending arbitration.

expressly rule on appellants' motion for reconsideration and notice of supplemental authority.

{¶ 27} On October 6, 2025, appellants timely filed their notice of appeal from the October 1, 2025 journal entry pursuant to R.C. 2711.02(C). Appellants raise three assignments of error for review.

1. The trial court committed reversible error when it granted defendant-appellees' motion to stay proceedings pending arbitration pursuant to the arbitration agreement which is: (1) substantively unconscionable; and (2) procedurally unconscionable;

2. The trial court committed reversible error when it referred the parties to arbitration, despite defendant-appellees' waiver of the right to arbitration; and

3. The trial court committed reversible error when it compelled the parties to arbitrate claims outside the scope of the arbitration agreement.

## II. Arbitration

### A. Standard of Review

{¶ 28} The question of whether an arbitration agreement is enforceable, including whether the agreement is unconscionable, presents a mixed question of law and fact. *Wilson v. Lawrence*, 2017-Ohio-1410, ¶ 9. The factual findings of the trial court are reviewed for an abuse of discretion, while the legal conclusion as to whether the contract is enforceable is reviewed de novo. *Arnold v. Burger King*, 2015-Ohio-4485, ¶ 47 (8th Dist.); *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, ¶ 19 (8th Dist.).

{¶ 29} An appellate court reviews a trial court's decision to grant or deny a motion to stay proceedings pending arbitration under an abuse-of-discretion

standard.  However, the question of whether a particular dispute falls within the scope of an arbitration agreement, and the related question of who decides that issue, the court or the arbitrator, presents a question of contract interpretation that this court reviews de novo.  *Vining v. Logan Clutch Corp.*, 2020-Ohio-675, ¶ 9 (8th Dist.); *Blue Technicians Smart Solutions, L.L.C. v. Ohio Collaborative Learning Solutions, Inc.*, 2020-Ohio-806, ¶ 17 (8th Dist.).

{¶ 30} Ohio public policy favors the enforcement of arbitration agreements. R.C. 2711.02(B); *Epps v. State Farm Auto. Ins.*, 2022-Ohio-4084, ¶ 13 (8th Dist.). However, an arbitration provision, like any contract clause, will not be enforced if it is found to be unconscionable.  *Arnold* at ¶ 49.  The party seeking to invalidate an arbitration agreement on the ground of unconscionability bears the burden of demonstrating that the agreement is both procedurally and substantively unconscionable.  *Arnold* at ¶ 50; *DeVito* at ¶ 27.  Both elements must be present; a deficiency in only one prong is fatal to the challenge.  *Arnold* at ¶ 50.

**B. Law and Analysis**

{¶ 31}  In their first assignment of error, appellants argue that the trial court committed reversible error in granting the motion to stay proceedings pending arbitration because the Arbitration Agreement was both substantively and procedurally unconscionable.

{¶ 32} Substantive unconscionability concerns the terms of the agreement itself and whether those terms are commercially reasonable, while procedural unconscionability concerns the circumstances surrounding the formation of the

agreement, including factors bearing on the parties' relative bargaining position. *Arnold*, 2015-Ohio-4485, at ¶ 51 (8th Dist.). We address each prong in turn.

{¶ 33} Appellants contend that the Arbitration Agreement is substantively unconscionable on three grounds: (1) the fee-splitting provision imposes prohibitive costs; (2) the one-year contractual limitations period is unreasonably short and effectively waives statutory remedies under R.C. Ch. 4112 and R.C. 3721.24; and (3) the agreement deprives them of substantive rights available in a judicial forum. We find these arguments unpersuasive.

{¶ 34} The Arbitration Agreement at issue is a stand-alone, four-page document captioned as a "Mutual Arbitration Agreement" between the employee and Healthcare Payroll KD. The agreement covers "any and all claims" arising from or relating to employment, expressly including claims of discrimination under federal or state law. The agreement is mutual: both the employee and the employer are bound to arbitrate covered disputes. It contains an express recommendation that the employee consult with legal counsel before signing, and it provides a 30-day rescission period during which the employee may withdraw from the agreement without consequence.

{¶ 35} With respect to the fee-splitting provision, appellants assert that the requirement to share arbitration costs renders vindication of their statutory rights prohibitively expensive. However, appellants have offered no concrete evidence of what those costs would actually be in their specific case. Generalized assertions about the potential cost of arbitration, unsupported by record evidence

demonstrating that the costs would in fact be prohibitive for these particular claimants, are insufficient to establish substantive unconscionability. *DeVito*, 2015-Ohio-3336, at ¶ 35 (8th Dist.) (party challenging arbitration on cost grounds must offer specific evidence of prohibitive expense, not speculation).

{¶ 36} As to the one-year limitations period, Ohio courts have repeatedly upheld contractually shortened limitations periods in arbitration agreements as commercially reasonable, provided the period affords a meaningful opportunity to assert the claim. The one-year period in this agreement begins to run from "the date on which the event giving rise to the dispute occurred" and applies symmetrically to both parties. A one-year window is not so short as to deprive an employee of a reasonable opportunity to discover, investigate, and assert an employment claim. Indeed, appellants here filed charges with the Ohio Civil Rights Commission within weeks of their September 9, 2024 terminations and filed their complaint in the court of common pleas on January 21, 2025, well within one year. The contractual limitations period did not, on this record, foreclose appellants from asserting their claims; their inability to proceed in court arose not from the limitations clause but from the agreement's referral of those claims to a different forum.

{¶ 37} Appellants' contention that the agreement deprives them of substantive rights conflates the forum in which a claim is heard with the substantive law applied to it. An arbitration agreement does not extinguish statutory claims; it merely provides an alternative forum for their resolution. The agreement here expressly covers, rather than waives, statutory employment claims, and nothing in

its terms purports to limit the substantive remedies available under R.C. Ch. 4112 or R.C. 3721.24.

{¶ 38} Appellants have not carried their burden of demonstrating that the agreement is substantively unconscionable. Because both prongs of the unconscionability test must be satisfied, this conclusion alone is dispositive of the assignment of error. *Arnold*, 2015-Ohio-4485, at ¶ 50 (8th Dist.). Nevertheless, in the interest of completeness, we address the procedural prong.

{¶ 39} Procedural unconscionability focuses on the circumstances surrounding the contracting parties' bargaining, including each party's age, education, intelligence, business acumen, and experience; who drafted the contract; whether alterations in the printed terms were possible; and whether there were alternative sources of supply for the goods or services in question. *Arnold*, 2015-Ohio-4485, at ¶ 52 (8th Dist.).

{¶ 40} Appellants argue that the agreement was procedurally unconscionable because: (1) the agreement was presented through the HostedTime online portal as part of a series of onboarding documents that had to be signed sequentially; (2) the portal did not afford adequate time to review the documents; (3) employees could not negotiate any term; (4) employees could not download or print the documents and lost access once submitted; and (5) the agreement was a condition of continued employment.

{¶ 41} While the manner of presentation, particularly through an electronic portal that allegedly limited the ability to retain a copy of the executed document,

raises some concern, the record does not establish that the circumstances of formation rose to the level of procedural unconscionability under Ohio law. Several features of the transaction weigh decisively against appellants' challenge.

{¶ 42} First, the Arbitration Agreement was a stand-alone, four-page document, separately captioned and distinct from the other onboarding materials. It was not buried in fine print within a larger document. The agreement itself expressly advised the employee to seek legal counsel before signing and conspicuously notified the employee, in plain language, that signing meant relinquishing the right to file a lawsuit and the right to a jury trial.

{¶ 43} Second, and most significant, the agreement contained a 30-day rescission period during which appellants could have withdrawn from the agreement without any consequences to their employment. The presence of a meaningful rescission right substantially undermines a claim that the agreement was the product of oppression or unfair surprise. The agreement specifically states: "Employee or, in the event of Employee's incapacity, Employee's authorized representative have the right to rescind this arbitration agreement by notifying the Facility in writing within thirty (30) days of the employment date." Arbitration Agreement, Section I. Appellants had a full month after signing to consult counsel, reflect on the terms, and exercise their unilateral right to opt out. They did not do so. A party who is given, but declines to exercise, the right to withdraw from an arbitration agreement without penalty cannot persuasively argue that the

agreement was procedurally unconscionable on the grounds that they had no meaningful choice. *Arnold*, 2015-Ohio-4485, at ¶ 77 (8th Dist.).

{¶ 44} Third, appellants are educated adult professionals with decades of work experience. Both worked as dietitians and had been employed on the King David campus for more than two decades at the time the agreement was presented. Although the agreement was offered on a take-it-or-leave-it basis as a condition of continued employment, that fact alone does not establish procedural unconscionability. Ohio courts have consistently held that the adhesive nature of an employment-related arbitration agreement, standing alone, is not sufficient to render it unconscionable. *Arnold* at ¶ 77.

{¶ 45} Fourth, appellants' assertion that they could not later access the documents, while a legitimate concern about recordkeeping practices, does not bear on the circumstances of formation. The relevant inquiry for procedural unconscionability is what the parties knew, understood, and were able to do at the time of contracting. At the time of signing, appellants were presented with the agreement, were given the opportunity to read it, were advised to consult counsel, and were afforded a 30-day window to rescind. Difficulties in obtaining copies of the executed agreement after the fact, while perhaps relevant to other issues, do not establish that the formation process itself was unconscionable.

{¶ 46} On this record, appellants have not demonstrated that the agreement was procedurally unconscionable.

{¶ 47} Because appellants have failed to establish either substantive or procedural unconscionability, and because both prongs are required, the trial court did not err in determining that the Arbitration Agreement is enforceable and in staying the proceedings pending arbitration.

{¶ 48} Therefore, appellants' first assignment of error is overruled.

{¶ 49} In their second assignment of error, appellants argued that the trial court committed reversible error when it referred the parties to arbitration because King David, Outcome, Liliestedt, and Miller waived any right to arbitrate by acting inconsistently with that right.

{¶ 50} A party may waive the right to arbitrate, like any other contractual right. *Blue Technologies*, 2020-Ohio-806, at ¶ 25. To establish waiver, the party opposing arbitration must demonstrate that (1) the party seeking arbitration knew of an existing right to arbitrate, and (2) the party acted inconsistently with that right. *Id*. at ¶ 26; *Midland Funding*, 2022-Ohio-4506, at ¶ 18.

{¶ 51} In determining whether the totality of the circumstances supports a finding of waiver, Ohio courts consider several factors, including: (1) whether the party seeking arbitration invoked the jurisdiction of the trial court by filing a complaint, counterclaim, or third-party complaint without asking for a stay; (2) the delay, if any, by the party seeking arbitration in requesting a stay or order compelling arbitration; (3) the extent to which the party seeking arbitration participated in litigation, including the status of discovery, dispositive motions, and the trial date;

and (4) any prejudice to the nonmoving party because of the moving party's prior inconsistent actions. *Blue Technologies* at ¶ 27; *Midland Funding* at ¶ 19.

{¶ 52} Turning to the first prong of the waiver inquiry by the opposing party, the record reflected that King David, and the affiliated appellees had actual knowledge of the Arbitration Agreement well before they moved to stay proceedings. On March 13, 2025, in the companion Yormick matter, counsel for Outcome filed the affidavit of H. Jason Black, which attached the onboarding documents executed by Yormick, including the Arbitration Agreement at issue. The same affidavit and exhibits were filed in this case on March 18, 2025, as an exhibit to Outcome's reply in support of its motion to dismiss. Appellees were the parties who placed the Arbitration Agreement before the trial court. By that date at the latest, appellees knew that an arbitration agreement existed in connection with the King David onboarding process under which appellants were employed.

{¶ 53} Although appellees represented to the trial court that current counsel did not appreciate the applicability of arbitration until July 11, 2025, knowledge of a corporate party is not measured solely by the awareness of successor counsel. The Arbitration Agreement was drafted by, executed in favor of, and held within the custody of appellees' own onboarding system. Appellees' new counsel entered an appearance on April 18, 2025, and the existence of the Agreement was already a matter of record by that time. The first prong of the waiver test was therefore satisfied.

{¶ 54} The closer question, and the one on which this assignment of error turns, is whether appellees acted inconsistently with the right to arbitrate. After review of the totality of the circumstances, the court concluded that they did not.

{¶ 55} As to the first factor, appellees did not invoke the jurisdiction of the trial court by filing a complaint, counterclaim, or third-party complaint. Appellants initiated this litigation. King David, Liliestedt, and Miller filed an answer, and Outcome filed a Civ.R. 12(B)(2) motion challenging personal jurisdiction. A motion contesting the trial court's power to adjudicate the dispute over a particular defendant is a threshold defense and is not the kind of affirmative invocation of the court's merits jurisdiction that ordinarily supports a finding of waiver. *See Blue Technologies*, 2020-Ohio-806, at ¶ 28-31. This factor weighed against waiver.

{¶ 56} As to the second factor, appellees filed their motion to stay on July 21, 2025, approximately six months after the complaint was filed on January 21, 2025, and approximately four months after the Arbitration Agreement appeared on the docket in this case. Although a delay of this duration is not insignificant, this district has recognized that delay alone, without a showing of meaningful participation in the litigation or prejudice, does not establish waiver. *Midland Funding*, 2022-Ohio-4506, at ¶ 24. The record further reflected that during a substantial portion of this period, the case sat dormant because of a series of visiting-judge assignments. No case-management conference occurred until August 22, 2025, after appellees had already moved to stay. The delay factor, while not entirely neutral, did not, standing alone, demonstrate conduct completely inconsistent with arbitration.

{¶ 57} As to the third factor, the extent of appellees' participation in the litigation, the record showed that appellees' substantive engagement was limited. The motion practice that occurred was confined to Outcome's threshold personal jurisdiction motion and routine answer  Although appellants propounded two sets of written discovery and noticed depositions, appellees did not propound any discovery of their own, did not respond substantively to a significant portion of the written discovery, did not take any depositions, did not file any dispositive motion directed at the merits, and did not obtain a trial date or substantive case-management order. *See Blue Technologies*, 2020-Ohio-806, at ¶ 32. Appellees did serve responses to the first set of written discovery on May 5, 2025, but those responses were largely tied to the pending jurisdictional dispute.  On this record, appellees did not litigate the merits of the case in a manner that this court has previously found sufficient to constitute waiver.

{¶ 58} The court acknowledged appellants' contention that appellees' discovery responses objecting to the production of onboarding documents as not "relevant" to any "claims or defenses" reflected a strategic decision to forgo arbitration. (Defs.' May 5, 2025 Disc. Resp.)  That argument has surface appeal. However, objections lodged during pre-arbitration jurisdictional discovery, even when imprecise, do not, without more, demonstrate the kind of affirmative, merits-based litigation conduct that this court has required to support a finding of waiver. *Blue Technologies* at ¶ 27.

{¶ 59} As to the fourth factor, prejudice, appellants were required to demonstrate concrete prejudice flowing from appellees' delay or litigation conduct. *Midland Funding*, 2022-Ohio-4506, at ¶ 25. The record did not establish such prejudice. No depositions had been taken; no merits discovery had been completed; no dispositive motions had been litigated; and no trial date had been set. Although appellants understandably expended resources in propounding discovery and litigating the personal jurisdiction motion, that work was largely tied to the jurisdictional issue and to obtaining the onboarding documents themselves. The expenditure of routine litigation costs, without more, does not amount to the degree of prejudice required to overcome the strong presumption in favor of arbitration. *Blue Technologies*, 2020-Ohio-806, at ¶ 33.

{¶ 60} Considering the totality of the circumstances under the four-factor framework, the court could not conclude that appellees engaged in conduct completely inconsistent with the right to arbitrate. Appellees did not invoke the court's jurisdiction by filing affirmative claims, did not engage in significant merits-based motion practice, did not take or substantively respond to merits discovery, did not obtain a trial date, and did not cause demonstrable prejudice to appellants beyond the costs ordinarily incurred at the outset of any litigation. While appellees' delay and their initial failure to plead arbitration as an affirmative defense gave the court pause, those facts alone did not satisfy appellants' heavy burden to demonstrate waiver in the face of Ohio's strong public policy favoring arbitration.

*Midland Funding*, 2022-Ohio-4506, at ¶ 17.  Accordingly, the trial court did not err in concluding that appellees did not waive their right to arbitrate.

{¶ 61} Therefore, appellants' second assignment of error is overruled.

{¶ 62} In their third assignment of error, appellants argued that the trial court committed reversible error when it compelled the parties to arbitrate claims outside the scope of the Arbitration Agreement.  Specifically, appellants contended that because appellees failed to "request and submit" a demand for arbitration to an arbitrator within one year of the events giving rise to the dispute, the contractual one-year limitations period set forth in Paragraph E of the Agreement extinguished any right to arbitrate, placing appellants' claims outside the scope of the Agreement.

{¶ 63} The Arbitration Agreement signed by each appellant contains a one-year contractual limitations provision, which states:

> Any request for arbitration of a dispute must be requested and submitted to the arbitrator within one (1) year of the date on which the event giving rise to the dispute occurred.  The failure to submit a request for Arbitration within such one (1) year period shall operate as a bar to any subsequent requests for arbitration, or for any claim for relief or remedy, or to any action or legal proceeding of any kind or nature, and the parties will be forever barred from arbitrating or litigating a resolution to any such dispute.

Motion to Stay, July 21, 2025, Ex. 1-A at ¶ E.

{¶ 64} Appellants were terminated on September 9, 2024.  Appellees did not file their motion to stay proceedings pending arbitration until July 21, 2025, and did not submit a demand to any arbitrator at all before that filing.  Appellants argued that because more than one year passed between the events giving rise to the

dispute, namely their September 9, 2024 terminations, and any request to arbitrate, the contractual one-year period had run, and appellees could no longer pull the claims into arbitration. However, per the facts, it was nine months, not 12. According to appellants, the consequence of that expiration was that the claims fell outside the scope of the Agreement, and the trial court erred by referring them to arbitration over appellants' objection.

{¶ 65} The threshold question, however, is not whether the one-year provision was triggered or how it should be applied. The threshold question is who decides that issue. On that point, Ohio law is settled. Once a court determines that the parties entered into a valid agreement to arbitrate and that the subject matter of the dispute falls within the substantive scope of that agreement, procedural questions that grow out of the dispute and bear on its final disposition are presumptively for the arbitrator, not the court. This includes questions of timeliness, compliance with conditions precedent, notice, and the application of contractual limitations periods. *Blue Techs. Smart Sols., L.L.C.* at ¶ 17.

{¶ 66} Appellants did not dispute, and could not credibly dispute, that the substantive subject matter of their claims, namely age discrimination and retaliation arising out of their employment and termination at King David, falls squarely within the language of Paragraph C of the Agreement, which covers "any claim of any kind . . . arising from or relating to an alleged violation of Federal or State employment law of any kind, or any other cause or reason arising from employee's employment in the Facility." Motion to Stay, July 21, 2025, Ex. 1-A at ¶ C.

{¶ 67} The dispute about the one-year provision in Paragraph E is not a dispute about whether the claims, by their nature, are the kind of claims the parties agreed to arbitrate. It is a dispute about whether a particular procedural condition within the arbitration framework, a contractual statute of limitations, was satisfied.

{¶ 68} That is the paradigmatic procedural question reserved for the arbitrator. Whether a party "timely" invoked arbitration under a contractual deadline, and what consequence flows from any delay, are matters that go to the application of the agreement's own internal timing rules, not to whether an agreement to arbitrate exists or what categories of disputes it covers. Treating the one-year clause as a scope question would invert the analysis and would convert every contractual limitations provision into a judicial gateway issue, contrary to Ohio's strong policy in favor of allowing arbitrators to decide such procedural questions. *Crider v. GMRI, Inc.,* 2020-Ohio-3668, ¶ 14 (8th Dist.).

{¶ 69} Appellants' reading also produced an internally inconsistent result. By its own terms, Paragraph E bars "any subsequent requests for arbitration, or for any claim for relief or remedy, or to any action or legal proceeding of any kind or nature," and provides that "the parties will be forever barred from arbitrating or litigating a resolution to any such dispute." Motion to Stay, July 21, 2025, Ex. 1-A at ¶ E. On appellants' construction, the running of the one-year period would simultaneously remove the claims from the scope of arbitration and free appellants to litigate them in court. The text says the opposite The provision operates as a contractual statute of limitations that bars both arbitration and litigation, not as a

gateway that returns time-barred claims to the courthouse. Whether and how that bar applies to appellants' particular claims is itself a question committed, in the first instance, to the arbitrator. *Blue Technicians Smart Solutions, L.L.C.* at ¶ 17.

{¶ 70} The trial court did not compel arbitration of claims "outside the scope" of the Agreement. The trial court determined that the parties had a valid agreement to arbitrate employment-related claims of the type appellants asserted and properly left the procedural question of timeliness under Paragraph E to the arbitrator. That ruling was consistent with Ohio's strong policy favoring arbitration and with the settled allocation of issues between courts and arbitrators. *Crider* at ¶ 14; *Vining* at ¶ 9.

{¶ 71} Therefore, appellants' third assignment of error is overruled.

{¶ 72} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LISA B. FORBES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR